UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AARON GRISSOM,<br><br>                    Plaintiff,<br><br>        v.<br><br>THE CITY OF NEW YORK,<br>NYPD OFFICERS JOHN DOE 1-8,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL<br>DEMANDED** |

Plaintiff AARON GRISSOM ("Mr. Grissom"), by his attorneys Josh Bernstein P.C., hereby brings this action under 42 U.S.C. § 1983 to redress his civil and legal rights, and alleges as follows:

**PRELIMINARY STATEMENT**

1. NYPD officers tackled, handcuffed, and then beat Mr. Grissom while he was immobilized face down on the ground, resulting in a cracked rib, among other injuries. NYPD officers then involuntarily transported Mr. Grissom to the hospital, where he was detained overnight in restraints before being discharged the following morning. Mr. Grissom was never arrested, charged, or civilly committed.

2. This is a civil rights action in which the plaintiff, Aaron Grissom, seeks relief for the defendants' violations of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, by the United States Constitution, including its Fourth and Fourteenth Amendments, and by the laws and Constitution of the State of New York. Plaintiff seeks

compensatory and punitive damages, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

3. This action is brought pursuant to 42 U.S.C. § 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. 1331 and 1343, this being an action seeking redress for the violation of the Plaintiffs' constitutional and civil rights.

4. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

5. Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that Defendant CITY OF NEW YORK ("the City") is administratively located within the Southern District of New York, and the events giving rise to this claim occurred within the boundaries of the Southern District of New York.

## JURY TRIAL DEMANDED

6. Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## PARTIES

7. At all times relevant to this action, Plaintiff Aaron Grissom was a resident of New York County, New York. He is currently a resident of Bronx County, New York.

8. Defendant City of New York is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department that acts as its agent in the area of law enforcement and for

which it is ultimately responsible. Defendant City of New York assumes the risks incidental to the maintenance of a police force and the employment of police officers. Defendant City of New York was at all times relevant herein the public employer of Defendants Police Officer JOHN DOE 1-8 ("John Does" or "John Doe 1-8").

9. Defendants John Doe 1-8 are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of the New York City Police Department, a municipal agency of Defendant City of New York. At all times relevant herein, the individual defendants were acting under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of New York and the New York City Police Department, in the course and scope of their duties and functions as officers, agents, servants and employees of Defendant City of New york, were acting for, and on behalf of, and with the power and authority vested in them by the City of New York and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. They are sued individually and in their official capacity.

10. By the conduct, acts, and omissions complained herein, Defendants John Doe 1-8 violated clearly established constitutional standards under the Fourth and Fourteenth Amendments to the United States Constitution of which a reasonable police officer under the circumstances would have known.

## NOTICE OF CLAIM

11. Plaintiff timely filed a Notice of Claim with the Comptroller of the City of New York, setting forth the facts underlying Plaintiff's claim against defendants John Doe 1-8 and the City of New York.

12. The City assigned a claim number to Plaintiff's claims, and Plaintiff was subjected to an examination pursuant to N.Y. Gen. Mun. L. Sec. 50-h on January 19, 2016.

13. To date, no answer has been received by Plaintiff, and no compensation has been offered by Defendant City of New York in response to this claim.

14. This action has been commenced within one year and ninety days of the date of occurrence of the events giving rise to this Complaint.

## STATEMENT OF FACTS

15. On the evening of March 15, 2015, officers of the New York City Police Department were called to the BRC Boulevard Men's Shelter ("Boulevard") at 2027 Lexington Avenue, New York, NY 10035, evidently to address a group of men congregating in front of the facility smoking "K2" synthetic marijuana.

16. At that time, Mr. Grissom had been a resident of the Boulevard for approximately four to five months. Mr. Grissom was outside of the Boulevard with a group of acquaintances standing approximately ten to fifteen feet to the right of the group of K2 smokers when the police were called.

17. By the time the police (four to five officers) arrived at the facility, the group of K2 smokers had already left. The officers entered the building and had a discussion with building staff. On the way out of the building, the officers told Mr. Grissom and the group of acquaintances he was standing with that they should not be congregating in front of the building.

18. Mr. Grissom acquiesced and walked down the block to a local park.

19. A few hours later, Mr. Grissom returned to the Boulevard. He entered the building and proceeded to the cafeteria area to watch television.

4

20. Shortly thereafter, a Boulevard supervisor by the name of "Trevor" came into the cafeteria and announced that everyone had to leave the cafeteria. Everyone in the cafeteria but Mr. Grissom and two other individuals left.

21. Shortly thereafter, six to eight police officers arrived.

22. Two of the officers proceeded to walk up to Mr. Grissom and announced: "you need to go to the hospital". Mr. Grissom responded: "What? Why do I got to go to the hospital?" One of the officers replied: "You need to get evaluated." Mr. Grissom responded: "no disrespect, but I'm not going to the hospital to get evaluated."

23. The officer asked why, and Mr. Grissom explained that he did not suffer from mental illness and that he took no psychiatric medication.

24. The officers proceeded to tackle Mr. Grissom to the ground and handcuff him. The officers did not arrest Mr. Grissom. They did not tell Mr. Grissom to turn around and place his hands behind his back, or otherwise afford him the opportunity to peaceably submit to handcuffing or any other variety of seizure.

25. After Mr. Grissom was immobilized on the ground face down and placed in handcuffs, officers continued to strike Mr. Grissom in the head, back, ribcage, shoulders and arms, resulting in a cracked rib, damaged sternum, and head and neck injuries severe enough to require a temporary neck brace and pain medication.

26. The officers then placed Mr. Grissom in physical restraints and transported him to Metropolitan Hospital Center in an ambulance against his will, where he was admitted and held overnight, in restraints.

27. Mr. Grissom's health care providers diagnosed him with a cracked rib, sternum injury, and other trauma requiring a neck brace. Mr. Grissom was prescribed painkillers and discharged the next day, March 16, 2015, at approximately nine A.M..

28. At no time during the course of the incident did Mr. Grissom pose a threat to defendants or anyone else. Mr. Grissom was not engaging in any criminal activity, and was not arrested or charged with any crime. Mr. Grissom was not subjected to civil commitment, and it is unclear whether he was ever even subjected to the "evaluation" the officers had referenced.

29. The conduct of the Defendants, in detaining Mr. Grissom, using force against him – particularly after Mr. Grissom was handcuffed and immobilized face down on the floor – and causing his overnight confinement was without probable cause, was excessive, and was done maliciously, falsely and in bad faith.

30. As a result of the events alleged herein, and due directly to the actions taken by the Defendants, Mr. Grissom suffered and/or continues to suffer physical pain, emotional trauma, discomfort, humiliation, fear, anxiety and embarrassment, among other things.

## CAUSES OF ACTION

### FIRST CLAIM: EXCESSIVE FORCE

**DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983**

31. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

32. The conduct and actions of Defendants John Doe 1-8, acting in concert and under color of law, in authorizing, directing, and or causing Mr. Grissom to be beaten, transported involuntarily, and detained overnight while confined in restraints, was

excessive and unreasonable, was done intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless disregard for the nature and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical pain and suffering in violation of Plaintiff's rights as guaranteed under 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution, including the right to be free from an unreasonable seizure of his person and the right to be free from the use of excessive, unreasonable, and unjustified force.

33. As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional injury, pain and humiliation, was deprived of his liberty, and was otherwise damaged and injured.

## SECOND CLAIM: FALSE ARREST AND FALSE IMPRISONMENT

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983

34. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

35. By their actions in this Complaint, Defendants acted under color of state law to deprive Plaintiff of his right to be free from false arrest and false imprisonment as guaranteed by the Fourth and Fourteenth Amendments of the Federal Constitution, as enforced by 42 U.S.C. § 1983.

## THIRD CLAIM: MUNICIPAL LIABILITY FOR CONSTITUTIONAL VIOLATOONS

### *MONELL* CLAIM AGAINST THE CITY OF NEW YORK – 42 U.S.C. 1983

36. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

37. The City of New York directly caused the constitutional violations suffered by Plaintiff, and is liable for the damages suffered by Plaintiff as a result of the conduct of the defendant officers. The conduct of the defendant officers was a direct consequence of the policies and practices of Defendant City of New York.

38. At all time relevant to this complaint Defendant City of New York, acting through the NYPC, had in effect policies, practices, and customs that condoned and fostered the unconstitutional conduct of the individual defendants, and were a direct and proximate cause of the damages and injuries complained of herein.

39. At all times relevant to this complaint, Defendant City of New York, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning retaliatory violence and excessive force against individuals who decline to submit to voluntary or involuntary commitment, or an examination for such commitment.

40. At all times relevant to this complaint, Defendant City of New York, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the unlawful search, seizure, and unlawful imprisonment and/or kidnapping of individuals who decline to submit to voluntary or involuntary commitment, or an examination for such commitment.

41. At all times relevant to this complaint, Defendant City of New York, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning retaliatory violence and

excessive force against individuals who refuse the requests or commands of NYPD officers or show perceived disrespect to NYPD officers.

42. At all times relevant to this complaint, Defendant City of New York, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning NYPD officers forcibly seizing and transporting individuals against their will to health care facilities when such individuals are not a danger to themselves or others.

43. The City of New York consciously disregards the illegality and unconstitutionality of the conduct, policies and practices articulated in ¶ 37-40. These policies, practices, customs and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

44. The City of New York knew or should have known of the defendant officers' propensity to engage in the misconduct of the type alleged herein. Upon information and belief, prior to March 15, 2015, the City of New York was aware of complaints of police misconduct involving the use of excessive force and retaliatory use of force, along with unlawful search and seizure, against individuals who decline to submit to voluntary of involuntary commitment, or an examination for such commitment; individuals who refuse the requests or commands of NYPD officers or show perceived disrespect to NYPD officers; and against persons who are not a danger to themselves or others. Despite its knowledge of such incidents, conduct, policies, and practices, the City of New York failed to take remedial action.

45. It was the policy and/or custom of the City of New York to inadequately and improperly investigate citizen complains of police misconduct, and acts of misconduct

were instead tolerated by the City of New York, including, but not limited to, the conduct and policies, practices, and procedures detailed above.

46. It was the policy and/or custom of the City of New York to inadequately train, supervise and discipline its police officers, including the defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The city did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

47. As a result of the above described policies and customs, police officers of the City of New York, including the defendant officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

48. The wrongful policies, practices, customs and/or usages complained of herein, demonstrated a deliberate indifference on the part of policymakers of the City of New York to the constitutional rights of persons within the city, and were the direct and proximate cause of the violations of Plaintiffs' rights alleged herein.

## FOURTH CLAIM: ASSAULT AND BATTERY
## IN VIOLATION OF NEW YORK LAW

49. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

50. By the conduct and actions described above, Defendant Officers John Doe 1-8 inflicted the torts of assault and battery upon Plaintiff. The acts and conduct of defendants Officers John Doe 1-8 were the direct and proximate cause of injury and

damage to Plaintiff and violated Plaintiff's statutory and common law rights as guaranteed by the laws and constitution of the State of New York.

51. Defendant Officers John Doe 1-8's acts constituted an assault upon Plaintiff in that Officers John Doe 1-8 intentionally attempted to injure Plaintiff or commit a battery upon him, and further that Officers John Doe 1-8's acts represented a grievous affront to Plaintiff.

52. Defendant Officers John Doe 1-8's acts constituted a battery upon Plaintiff in that the above described bodily contact was intentional, unauthorized, and grossly offensive in nature.

53. The actions of Defendant Officers John Doe 1-8 were intentional, reckless, and unwarranted, and without any just cause of provocation, and Defendant Officers John Doe 1-8 knew, or should have known, that their actions were without the consent of Plaintiff.

54. The injuries sustained by Plaintiff were caused wholly and solely by reason of the conduct described, and Plaintiff did not contribute thereto.

55. Defendant Officers John Doe 1-8 engaged in the above conduct while acting as employees of the City of New York, in the course of their employment and the scope of their authority in furtherance of the interest of their employer.

56. As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and humiliation, and was deprived of his liberty, and was otherwise damages and injured.

## FIFTH CLAIM: FALSE/UNLAWFUL IMPRISONMENT

## IN VIOLATION OF NEW YORK LAW

57. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

58. Defendants subjected Plaintiff to false arrest and false imprisonment in violation of the laws of New York State, since the Plaintiff was wrongfully, unlawfully, unjustifiably, and forcibly detained and deprived of his liberty against his will. The defendants did so while acting as employees of the City of New York, in the course of their employment and the scope of their authority in furtherance of the interest of their employer.

## SIXTH CLAIM: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

59. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

60. Defendant Officers John Doe 1-8's conduct, in beating Plaintiff after he was handcuffed, face down on the ground, and immobilized, and in unlawfully detaining Plaintiff, without provocation or justification, was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency.

61. Defendant Officers John Doe 1-8's conduct, described above, was intended to and did cause severe emotional distress to Plaintiff.

62. The conduct of Defendant Officers John Doe 1-8 was the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and constitution of the State of New York.

63. As a result of the foregoing, Plaintiff was deprived of his liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damages and injured.

## SEVENTH CLAIM: NEGLIGENCE
## COMMON LAW CLAIM

64. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

65. Defendants Officers John Doe 1-8, while acting as agent and employee for Defendant City of New york, in their capacity as NYPD officers for the City of New york, owed a duty to Plaintiff to perform his police duties without the use of excessive force. Defendants Officers John Doe 1-8's use of force upon Plaintiff, when Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to Defendants or to others constitutes negligence for which Defendant Officers John Doe 1-8 are individually liable.

66. Defendants Officers John Doe 1-8's use of force upon Plaintiff when Defendants had no lawful authority to arrest, detain, or to use force against Plaintiff constitutes negligence for which Defendant Officers John Doe 1-8 are individually liable.

67. As a proximate result of Defendant Officers John Doe 1-8's negligent use of excessive force, Plaintiff sustained physical and emotional pain and suffering, and was otherwise damages and injured.

## EIGHTH CLAIM: RESPONDEAT SUPERIOR LIABILITY
## OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS\

68. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

69. The conduct of Defendants Officers John Doe 1-8 alleged herein occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while acting as agents, officers, servants, and employees of Defendant City of New York. As a result, Defendant City of New York is liable to Plaintiff pursuant to the state common law doctrine of respondeat superior.

## NINTH CLAIM: NEGLIGENT SUPERVISION, RETENTION AND HIRING
## COMMON LAW CLAIM

70. Plaintiff re-alleges and incorporated by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

71. Defendant City of New York negligently trained, retained, and supervised Defendants John Doe Officers 1-8. The acts and conduct of Officers John Doe 1-8 were the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

72. As a result of the foregoing, Plaintiff was deprived of his liberty, was subjected to great physical and emotional pain and suffering, and was otherwise damages and injured.

**WHEREFORE,** Plaintiff demands the following relief jointly and severally against all of the Defendants:

a. Compensatory damages in an amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. The convening and empanelling of a jury to consider the merits of the claims herein;

d. Costs, interest, and Attorney's fees;

e. Such other and further relief as this Court may deem just and proper.

Dated: New York, New York

March 24, 2016

Josh Bernstein, P.C.
*Counsel for Plaintiff*

By: _____
Joshua Alexander Bernstein
175 Varick Street
New York, NY 10014
(646) 308-1515
jbernstein@jbernsteinpc.com
